## EDWARD P. ALLIS CO. v. STANDARD NAT. BANK OF THE CITY OF NEW YORK et al.

(Circuit Court of Appeals, Second Circuit.   July 1, 1903.)

### No. 130.

1. EQUITY—SUIT FOR FRAUD—EVIDENCE CONSIDERED.

Evidence *held* insufficient to establish fraud on the part of defendant national bank in the organization or operation of a corporation which was formed by complainant and certain stockholders and officers of the bank to continue the business of two insolvent lumber companies of which both complainant and the bank were creditors, or any action of the bank which rendered it liable in equity to complainant on the contracts of such corporation.

Appeal from the Circuit Court of the United States for the Southern District of New York.

W. E. Carter, for appellant.

H. H. Bowman, for appellees.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

PER CURIAM. The following excerpt from the opinion of the Circuit Court succinctly sets forth the circumstances under which the controversy arose:

"In the early part of 1896 the complainant was the owner and in possession of a sawmill plant at Chatterton, Florida. This plant had formerly been occupied by the C. T. Snowden Cypress Mill Company, a corporation, which had abandoned it, and conveyed it to the complainant. The Snowden Company had theretofore entered into a contract with a New Jersey corporation, known as the Withlacoochee Lumber Company, by the terms of which the Snowden Company had agreed to remove to its mill and convert the same into marketable lumber the standing trees which the lumber company owned, or represented that it owned, for an agreed price per thousand feet. Both companies became financially embarrassed, and the Snowden Company transferred its property to the complainant, as above stated, in payment for the mill plant and machinery which had been furnished by the complainant. The defendant the Standard National Bank had, prior to this time, become a creditor in the sum of about $15,000 of the lumber company, for which debt it held no available security. Upon investigation it was discovered that said lumber company was without assets, the title to the lands, which it was supposed to own, being in one Paul, of Philadelphia. The bank was also a creditor of the Snowden Company. In these circumstances

the defendant the New York Lumber Company was organized, with the expectation and hope that by a reorganization of the business, with additional capital, it might prove successful, and thus enable all the creditors, the complainant included, to make themselves whole in the future."

The New York Lumber Company was incorporated November 3, 1896, pursuant to an agreement between complainant and defendants Brown, Mayer, and Lynch. Brown was vice president and a director of the bank, and Mayer was an agent whom the bank had employed to make examination into the situation in Florida, and to collect its claims against its debtors. The stock of the company was to be apportioned among the parties to this agreement, and it was part of the plan that complainant's sawmill and plant was to be leased and used by the new company in carrying on its business by converting into marketable lumber the cypress timber obtained from Paul. The bank from time to time advanced to the New York Lumber Company on its notes sums amounting in the aggregate to more than $35,000; nevertheless the enterprise turned out disastrously, and the Lumber Company failed, owing complainant for rent, insurance, damages to personal property, etc.

The Circuit Court thus epitomized the relief demanded in the complaint:

"First. That the defendants be adjudged and decreed to reassign to the complainant a judgment obtained by it against the Withlacoochee Lumber Company, and transferred to the defendants Brown, Mayer, and Lynch, September 29, 1896.

"Second. That an accounting be had between the complainant and defendants for rentals, taxes, and insurance due under the lease of the sawmill plant to the New York Lumber Company, and for damages occasioned by the improper care of the said plant.

"Third. That the defendant Brown, who, in consideration of an extension by the complainant of the time of payment of the rent due August 1st and the months following, agreed to pay $5,000 of the amount so extended on or before January 1, 1898, be adjudged and decreed to pay said amount and interest thereon.

"Fourth. That the defendant the Standard National Bank, 'by and through its said creature, said New York Lumber Company,' may be adjudged and decreed to convey to the complainant all interest which the said bank or lumber company have obtained or will obtain in the 15,000,000 feet of cypress timber agreed to be conveyed by said Paul.

"Fifth. That the defendants Brown, Mayer, and Lynch be 'decreed and directed to cause the said defendant Burrows to forthwith turn over to your orator the said $60,000 in stock so placed in his hands, as above stated.'"

The decree granted the relief prayed in the first and fifth of these paragraphs. As to the third it held that, assuming all complainant's contentions as to the facts to be true, it had an adequate remedy at law, and therefore refused relief in equity.

By the first three assignments appellant charges error (1) in refusing to find that the New York Lumber Company was in substance and effect the Standard National Bank acting under the disguise of the lumber company, and that complainant in making the agreement under which the new lumber company was organized really contracted with the bank through its authorized officers and agents, and not with the defendants Brown, Mayer, and Lynch as individuals; (2)

in holding the evidence fails to establish any agreement or obligation on the part of the bank which renders it liable to complainant; and (3) in finding that there is no agreement, oral or written, in the name of the bank.

The record is extremely voluminous, and contains a large amount of irrelevant matter. The fundamental question involved is one of fact, and nothing would be gained by a long rehearsal of the evidence. Suffice it to say that we concur with the Circuit Court in the conclusion that the New York Lumber Company was not the "Standard National Bank acting under the name and disguise of the lumber company," and that the bank did not, either directly or as undisclosed principal, enter into any contract to respond to complainant for the defaults of the lumber company. Brown was vice president and a director, Burrows was a director, and as such officers they were the agents of the bank to do what bank officers may properly do. Mayer was a special agent employed to collect the claims of the bank against the Snowden Company. Within the scope of their employment whatever was done by these agents would be binding upon their undisclosed principal, but there is nothing to show that the principal in this case ever employed them or either of them to embark the bank in the business of running a sawmill in Florida. The circumstance that, after the lumber company was started, the bank financed it by discounting its paper and loaning it money, is not persuasive, nor does it make any difference that the vice president promised in advance that he would make loans of the bank's funds for such purpose. Such a promise was highly improper, under all the circumstances, and the funds of the bank were most improvidently handled in the effort its officers made to get back money which their prior improvidence had sunk in a bankrupt enterprise; but the evidence falls far short of establishing any action by the bank which would make it directly responsible for the obligations of an independent corporation engaged in the lumber business.

The fourth assignment of error deals with a finding of the Circuit Court touching the application of the doctrine of ultra vires. That need not be considered; it would be idle to discuss whether a national banking corporation could or could not do something, when the proof fails to show that it did or even tried to do it.

Of the remaining errors assigned it is stated in the brief that, "while they are severally insisted upon, they do not seem to require separate consideration." There is no other reference to them; it will be sufficient therefore to state that, in our opinion, they do not present ground for reversal.

The decree is affirmed, with costs.